UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CAREY HIXSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: 5:17-CV-032 |
| BRYAN HUTCHESON, et al., | ) ) ) | By: Michael F. Urbanski, United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant Southern Health Partners, Inc.'s ("SHP") motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 9. SHP argues that plaintiff Cary Hixson[1] has failed to state a breach of contract claim against SHP because Hixson was not an intended third-party beneficiary of the contract between SHP and Harrisonburg-Rockingham Regional Jail ("HRRJ"). ECF No. 10, at 1. Hixson has filed a response in opposition, ECF No. 17, to which SHP has replied, ECF No. 24. The court held a hearing on the motion on May 31, 2017. ECF No. 26. For the reasons that follow, the court treats SHP's motion as requesting dismissal under Rule 12(b)(1),[2] and **GRANTS** the motion (ECF No. 9). SHP is dismissed as a defendant in this matter.

---

[1] Counsel noted, in the response to the motion to dismiss, that Hixson's first name is spelled "Cary," not "Carey." See ECF No. 17, at 1. However, his complaint was originally filed under the name "Carey Hixson." Hixson has not requested that the court correct the error, and Carey Hixson v. Bryan Hutcheson, et al. remains the official case style of this matter.

[2] As discussed infra, SHP argues that Hixson is not an intended third-party beneficiary of the contract between SHP and Harrisonburg-Rockingham Regional Jail, and thus does not have standing to sue on the contract. See Kelly Health Care, Inc. v. Prudential Ins. Co. of Am., Inc., 309 S.E.2d 305, 307 (Va. 1983). "Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction." Payne v. Chapel Hill N. Props., LLC, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013). The Fourth Circuit Court of Appeals has "recognized that a defendant may challenge subject

**I.**

Plaintiff Cary Hixson is a former inmate of Harrisonburg-Rockingham Regional Jail.[3] While incarcerated at HRRJ, Hixson, who is diabetic, alleges that, despite medical staff's knowledge of his diabetes, he was never provided with the insulin necessary to treat his condition and keep his blood sugar under control. "As a result, Mr. Hixson suffered excruciating pain throughout his feet, hands and legs, as well as experiencing blurred vision, ringing in his ears, on top of his vital organs slowly depreciating in functionality." ECF No. 1, at 2. Hixson was also threatened with solitary confinement if he complained about his neglectful treatment. Hixson's medical care was administered by "Dr. Moran"[4] and several unnamed nurses, all of whom were employed by SHP, pursuant to a contract between SHP and HRRJ providing for inmate healthcare.

Hixson filed his complaint on March 31, 2017 against SHP, Dr. Moran, two "John Doe" nurses, Sheriff Bryan Hutcheson, supervising operator of HRRJ, and Captain Steven Shortell, operator of HRRJ. He alleges deliberate indifference to his medical needs, negligence, gross negligence, and violation of the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983. Relevant to the instant motion, Hixson also alleges

---

matter jurisdiction in one of two ways." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). "The defendant may contend either that the complaint fails to allege facts upon which subject matter jurisdiction can be based, or that the jurisdictional facts alleged in the complaint are untrue." N.C. Motorcoach Ass'n v. Guilford Cty. Bd. of Educ., 315 F. Supp. 2d 784, 790 (M.D.N.C. 2004). Here, SHP's challenge is of the first variety: it does not argue that Hixson falsely asserts the existence of a contract, only that Hixson is not entitled, as a matter of law, to sue on that contract. Where a defendant brings this type of "facial challenge" to jurisdiction, Kerns, 585 F.3d at 192, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Thus, though the court grants SHP's motion under Rule 12(b)(1) rather than 12(b)(6), the scope of inquiry is unchanged.
[3] This factual summary is taken from Hixson's complaint. ECF No. 1.
[4] Dr. Moran's first name is not disclosed in the record.

2

breach of contract against SHP, arguing that, as an intended beneficiary of the contract between HRRJ and SHP, he may sue to enforce its terms.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

3

In considering a motion to dismiss, the court is "generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). However, other evidence may sometimes be consulted:

> [The court] also considers documents that are explicitly incorporated into the complaint by reference, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits, see Fed. R. Civ. P. 10(c). And . . . [the court] may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. [Sec'y of State for Defence v.] Trimble [Nav. Ltd.], 484 F.3d [700], 705 [(4th Cir. 2007)]; Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Id. at 166.

### III.

"At common law, 'the general rule was that . . . [a breach of contract] action must be brought in the name of the party in whom the legal interest was vested, and that this legal interest was vested in the person to whom the promise was made'"—i.e., the contracting party. Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals, 786 S.E.2d 453, 453 (Va. 2016) (quoting Thacker v. Hubard, 94 S.E. 929, 931 (Va. 1918)). However, courts recognize an exception, and have found third party standing to sue on the contract where the contract evinces "[a] clear intent to benefit [a] third person." Valley Landscape Co., Inc. v. Rolland, 237 S.E.2d 120, 122 (Va. 1977).

Virginia "[c]ourts have narrowly interpreted the standard for an intended beneficiary." Radosevic v. Va. Intermont Coll., 651 F. Supp. 1037 (W.D. Va. 1987). In

4

Obenshain v. Halliday, 504 F. Supp. 946 (E.D. Va. 1980), the court considered whether the estate of a passenger killed in an airplane crash allegedly caused by malfunctioning runway lights had standing to sue on the contract between the county and the United States to build, operate and maintain the airport. The court noted the basic rule that "a third-party beneficiary [must] show that an agreement is clearly and definitely intended to bestow a direct benefit on him before he has standing to sue." Id. at 956. Looking to "the four corners of the contract," the court found that "there [was] no language which show[ed] clear and definite intent to benefit [the plaintiff] in a manner which would grant her standing to sue." Id. The court also noted the "broad" expansion of liability to the public that would occur if the plaintiff were granted standing, and ultimately granted summary judgment to the defendant. Id.

Similarly, in Radosevic, 651 F. Supp. 1037, the court declined to find standing to bring a breach of contract suit against an independent housekeeping and maintenance company that left a latch unsecured, resulting in injury to the plaintiff. The court distinguished between incidental and intended beneficiaries, "with only the latter having standing to sue." Id. at 1038.

> These two terms are antithetical by definition: an incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue on that contract whereas an intended beneficiary is such an integral part of the obligations assumed by the contracting parties that a court will permit him to sue on that contract. This distinction rests upon the basic premise of the law of contracts that a court will not enforce a contract absent two mutually bargained for considerations; and, consequently, courts will not impose an additional unbargained for obligation on a contracting party.

5

Id. Given that "[t]he terms of the ... contract d[id] not manifest a clear and definite intent" to benefit the plaintiff, the court declined to find standing to sue.

### A.

The "four corners" of the contract at issue in this matter[5] (hereinafter, "the Contract") clearly indicate that Hixson is not an intended third-party beneficiary. Clause 9.8 of the Contract reads in full:

> 9.8 Other Contracts and Third-Party Beneficiaries.
> The parties acknowledge that SHP is neither bound by nor aware of any other existing contracts to which RRJ is a party and which relate to the providing of medical care to inmates at the RRJ. *The parties agree that they have not entered into this Agreement for the benefit of any third person* or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof.

ECF No. 10-1, at 14 (emphasis added). Hixson attempts to rebut this provision by arguing that it is "not specific enough to show that the parties intended to disclaim Hixson (or any other [H]RRJ inmate) as direct third-party beneficiaries of SHP's medical services under the governing contract." ECF No. 17, at 1. Thus, Hixson contends this "vague and boilerplate language," id. at 2, should be read in the context of the contract's purpose: provision of medical care to inmates.

Hixson's argument is ultimately unpersuasive. Clause 9.8 is not vague. To the contrary, it expresses as clearly as possible that SHP and HRRJ did not intend to create

---

[5] The contract is attached as an exhibit to SHP's brief in support of its motion to dismiss. See ECF No. 10-1. Hixson made clear, in his response to SHP's motion, that the complaint did not explicitly incorporate the contract by reference. See ECF No. 17, at 6 n.3 ("In his Complaint, Mr. Hixson used the language of Rockingham County's Request [f]or Proposals and SHP's proposal..., the terms of which governed the original contract that was renewed for multiple years."). Nonetheless, the court will consider the Contract, given that it is integral to Hixson's complaint, and Hixson does not appear to dispute its authenticity. See id. ("To the extent that [the contract] was in effect at the time of the events giving rise to this litigation, Mr. Hixson accordingly responds to Defendant's motion."); Goines, 822 F.3d at 166.

6

third-party beneficiaries by entering into the Contract. That Clause 9.8 does not specifically mention inmates is of no moment. See ECF No. 17, at 14–16. SHP and HRRJ "agree[d] that they [did] not enter into this Agreement for the benefit of *any third person.*" ECF No. 10-1, at 14 (emphasis added). Thus, by the plain language of the contract, no third-party person, including inmates or anyone else, can assert intended third-party beneficiary status. Clause 9.8 is not vague, it is simply explicitly, purposefully broader than Hixson's suggested language.

Hixson's citation to Ashton v. Pierce, 716 F.2d 56 (D.C. Cir. 1983) does not change the court's analysis. In Ashton, the Court of Appeals for the District of Columbia Circuit held that tenants of public housing were entitled as third-party beneficiaries to sue on a contract between the Department of Housing and Urban Development and National Capital Housing Authority.[6] The contract in Ashton provided that "[n]othing in this contract shall be construed as creating or justifying any claim against the Government by any third party." Id. at 66. Nonetheless, the court held, "Assuming that the parties can contract away the third-party beneficiary's right to enforce the contract, the intention to do so must be more clearly expressed." Id.

Unlike Ashton, the Contract between SHP and HRRJ does not merely attempt to disclaim the liability of one contracting party to a third party: Clause 9.8 goes further and unequivocally states that no third-party is intended to benefit by the Contract. Thus, the facts of this case are more analogous to those of Richmond Shopping Center, Inc. v. Wiley N. Jackson Co., 255 S.E.2d 518 (Va. 1979). In that case, the plaintiff alleged damage to his

---

[6] That contract concerned the National Capital Housing Authority's compliance with lead-based paint elimination requirements. Id. at 66.

7

property caused by heavy equipment traversing during highway construction work. Id. at 519. He claimed that he was entitled to sue on the construction contract as an intended third-party beneficiary. The Virginia Supreme Court disagreed, and pointed to a contract provision specifying that the parties "[did] not intend[] to confer a benefit directly on any member of [the] public." Id. at 523. The court thus found that it "need[ed] look no further than the four corners of this contract to determine that a clear intent has been manifested . . . [n]ot to benefit directly this plaintiff or any other member of the public." Moreover, other parts of the contract could not outweigh the clause disclaiming third-party beneficiaries: the court found that "to look to other sections of the contract in order to determine the applicability of the third party beneficiary doctrine would disregard the very part of the contract which deals specifically in unambiguous terms with that subject and with the intention of the contracting parties." Id. The same is true here.

In support of his position, Hixson also cites Ogunde v. Prison Health Servs., Inc., 645 S.E.2d 520 (Va. 2007), which involved similar factual circumstances to this case. In Ogunde, the Virginia Supreme Court ruled that a plaintiff inmate who alleged inadequate medical care was entitled to bring a breach of contract action based on the contract between the Virginia Department of Corrections and a medical services provider. Id. at 525. Hixson argues that, "[l]ike in Ogunde, SHP's performance under this contract renders a *direct benefit* to Mr. Hixson—providing him with medically necessary health care as an inmate of HRRJ." ECF No. 17, at 10.

Hixson is correct: SHP's performance under the Contract benefits him. However, this fact alone does not confer standing to sue for breach of contract. This benefit must be

8

coupled with evidence that SHP and HRRJ clearly and definitely intended that benefit. Ogunde contained no explicit statement of the contracting parties' intent as to third parties. Thus, in the absence of explicit indicia of the parties' intent, the court looked to the stated purpose of the contract—"to 'provide cost effective, quality inmate health care services for up to approximately 6,000 inmates . . . ."—and found that it "'clearly and definitely' indicate[d] that [the contracting parties] intended to provide a benefit to, among others, Ogunde." 645 S.E.2d at 525.

Unlike Ogunde, the Contract in this case expressly disclaims any intent to bestow a benefit on any third party. In the absence of Clause 9.8, Hixson could likely rely on the evident purpose of the Contract—to provide medical services to inmates—to establish intended third-party beneficiary status and standing to bring a breach of contract action against SHP. But, SHP and HRRJ included Clause 9.8 and explicitly stated their intent to benefit no third party. This court, like the Virginia Supreme Court in Richmond Shopping Center, will not "disregard the very part of the contract which deals specifically in unambiguous terms with . . . the intention of the contracting parties." 255 S.E.2d at 523. "While plaintiff is incidentally benefitted by the contract, there is no language which shows clear and definite intent to benefit h[im] in a manner which would grant h[im] standing to sue." Obenshain v. Halliday, 504 F. Supp. 946, 956 (E.D. Va. 1980).

The court concludes that Hixson may not maintain a breach of contract action against SHP. That does not mean, however, that he is without recourse in this matter.

> To incarcerate, society takes from prisoners the means to provide for their own needs. Prisoners are dependent on the State for food, clothing, and necessary medical care. . . . A prison that deprives prisoners of basic sustenance, including

9

> adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society.

Brown v. Plata, 563 U.S. 493, 510 (2011). The prospect that HRRJ could "have it both ways"—gaining "immunity from liability based on an inmate's lack of standing to sue as an intended beneficiary of a contract, and also, at the same time, immunity from liability by delegating its [medical] responsibilities to an independent medical provider"—is "troubling." Kilburn v. Dep't of Correction, 72 Mass. App. Ct. 1105, at *3 n.6 (Mass. App. Ct. June 30, 2008) (unreported table decision). That is why "it is well settled that choosing to meet the duty to provide prisoners with medical care through the services of a private contractor has no bearing on [a prison's] constitutional and statutory responsibility to assure that the care provided is adequate and appropriate to meet prisoners' legitimate needs." Scott v. Clarke, 64 F. Supp. 3d 813, 819 (W.D. Va. 2014) (collecting cases). The court today holds only that Hixson may not proceed in his suit against SHP; his causes of action against the remaining defendants are unaffected by this decision.

## IV.

Hixson argues that he is an intended third-party beneficiary to the contract between HRRJ and SHP, despite contract terms that explicitly disavow any such intent. The plain language of the Contract simply forecloses that argument. Accordingly, defendant Southern Health Partners, Inc.'s motion to dismiss, ECF No. 9, is **GRANTED**. An appropriate Order will be entered.

10

Entered: 06/18/2017

*signature*

Michael F. Urbanski
United States District Judge