**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **CAREY HIXSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 5:17-CV-32** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BRYAN HUTCHESON, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Southern Health Partners, Inc. ("SHP"), Katherine Raynes, LPN ("Nurse Raynes"), and Janelle Seekford, RN ("Nurse Seekford"), by counsel, submit the following Memorandum in Support of Motion for Summary Judgment and in support thereof state:

**STATEMENT OF THE CASE**

In this medical malpractice and civil rights action filed pursuant to 42 U.S.C. §1983, Plaintiff claims Nurse Raynes and Nurse Seekford violated his Eighth Amendment rights and SHP, Nurse Raynes and Nurse Seekford breached the standard of care by failing to order him or ensure that he was prescribed insulin or other diabetic medication while he was an inmate at Harrisonburg-Rockingham Regional Jail ("HRRJ"). Because (1) nurses are not allowed by law to order medication without a prescription, (2) the doctor reviewed the blood sugar readings and never prescribed medication, (3) Nurse Seekford never took Plaintiff's blood sugar, and (4) Nurse Raynes flagged Plaintiff's high blood sugar readings for the doctor's review, summary judgment is warranted. Further, Plaintiff has failed to establish causation of damages.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 1 -

1091.0001\KMD
4842-8307-0073 .v1

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   Plaintiff was incarcerated for approximately five months at HRRJ where Dr. Moran was the physician and SHP provided nursing services, including the services of Nurse Raynes and Nurse Seekford.  (Second Am. Compl. at ¶¶ 7, 10, 13, 16, 19-20; Exhibit 1 – Rupe's Report).

2.   Prior to his incarceration, Plaintiff was diagnosed with Type 2 diabetes and prescribed Metfomin, Lantus and Humalog.  (Exhibit 2 – Hixson p. 27 ln. 11 – p. 28 ln. 10).

3.   Upon his arrival at HRRJ, Plaintiff informed the intake nurse that he was diabetic and had been in the past prescribed Metfomin, Lantus, and Humalog.  He provided her with the name of his provider to request his records.  (Ex. 2 – Hixson p. 113 ln. 5-14).

4.   The intake nurse faxed a record request to Plaintiff's medical provider but received no response.  (Exhibit 3 – Raynes p. 38 ln. 7-19).[1]

5.   After reviewing Plaintiff's self-report as a diabetic and self-report of being prescribed Metfomin, Lantus, and Humalog, Dr. Moran ordered daily blood sugar checks and a diabetic diet.  (Exhibit 4 – Seekford p. 47 ln. 7-9, p. 48 ln. 20-22; Exhibit 5 – Moran p. 34 ln. 13-20).

6.   When Nurse Raynes took Plaintiff's blood sugar readings and they were higher than usual, she provided him education on what foods to avoid.  (Ex. 3 – Raynes p. 48 ln. 20 – p. 49 ln. 3).

7.   In January, due to Plaintiff's slightly elevated blood sugars, Dr. Moran ordered the nurses to begin checking Plaintiff's blood sugar twice per day.  (Exhibit 6 – Rupe p. 175, ln. 9-17; Ex. 5 – Moran p. 87 ln. 21-23).

---

[1] The intake nurse is not a named defendant in this matter.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1

8.   In January, Plaintiff and Nurse Raynes "got into it" about his blood sugar readings. Nurse Raynes told him to put in a request to see the doctor, and Plaintiff loudly and degradingly "cussed [Nurse Raynes] out."  As a result of Plaintiff's aggressive behavior, Nurse Raynes threatened Plaintiff with a jail charge, which can result in segregation.  (Ex. 2 – Hixson p. 73, ln. 19 – p. 74 ln. 12; Ex. 3 – Raynes p. 55 ln. 12 – p. 56 ln. 23).

9.   Plaintiff was released from HRRJ on January 29, 2017.  (Ex. 1 – Rupe's Report).

10. Plaintiff was aware of the proper jail procedures to submit a request to see Dr. Moran or other medical staff.  (Ex. 2 – Hixson p. 46, ln. 23 – p. 47 ln. 6).  In fact, he put in requests to see Dr. Moran and/or medical staff for other issues, but never put in a request to see him about his diabetes.  (Ex. 2 – Hixson p. 47, ln. 7-23).  While seeing Dr. Moran for other issues, Plaintiff never talked to him about his diabetes.  (Ex. 2 – Hixson p. 48 ln. 4-10).  Further, Plaintiff never filed a grievance regarding his diabetes.  (Ex. 2 – Hixson p. 48, ln. 11-13).

11. SHP's Treatment Protocols suggest nurses notify the doctor when a patient's blood sugar is 351 and above for those inmates already receiving oral medication.  (Ex. 6 – Rupe Ex. 2).[2]

12. Neither Raynes nor Seekford recorded a blood sugar reading that was 351 or above.  (Ex. 6 – Rupe Ex. 5; Ex. 3 – Raynes p. 47 ln. 14 – p. 48 ln. 2).  In fact, Seekford never took Plaintiff's blood sugar.  (Ex. 4 – Seekford p. 45 ln. 13-20).

FAP

FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[2] It should be noted that the sliding scale on the SHP Treatment Protocols cannot be initiated until a doctor has ordered it.  And that based on the Protocols, a patient is placed on a sliding scale after his/her blood sugar is unresponsive to oral medications, which again require a doctor's order. (Ex. 6 – Rupe Ex. 2; Ex. 4 – Seekford p. 81 ln. 14 – p. 82 ln. 10).

- 3 -

13. Nurses are not authorized to order insulin or any other prescription medication. (Ex. 6 – Rupe p. 146 ln. 13-25 –p. 147 ln. 1-7; Ex. 4 – Seekford p. 78 ln. 15 – p. 79 ln. 8; Ex. 3 – Raynes p. 29 ln. 7-14).

14. When Plaintiff's blood sugar was consistently over 200, Nurse Raynes flagged the readings for Dr. Moran's review by placing a sticky note on the chart.  (Ex. 3 – Raynes p. 44 ln. 18 – p. 45 ln. 2; Ex. 5 – Moran p. 78 ln 25 – p. 79 ln. 17).

15. Dr. Moran reviewed and signed Plaintiff's blood sugar readings weekly.  (Ex. 3 – Raynes p. 14 ln. 17-18; Ex. 5 – Moran 95 ln. 15-25).  Dr. Moran never ordered insulin or any other diabetic medication for Plaintiff.  (Ex. 4 – Seekford p. 55 ln. 9-20; Ex. 5 – Moran p. 89 ln. 9-18).

**ARGUMENT & AUTHORITIES**

Based on the above undisputed facts, no reasonable juror could conclude that SHP, Nurse Raynes or Nurse Seekford breached the standard of care or that Nurse Raynes or Nurse Seekford was deliberately indifferent to Plaintiff's medical needs.  Further, Plaintiff has failed to prove causation of damages.

## I.   **Standard of Review under Rule 56**

Federal Rule of Civil Procedure 56(a) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Glynn v. EDO Corp.</u>, 710 F.3d 209, 213 (4th Cir. 2013). The court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" filed by the parties. <u>Celotex</u>, 477 U.S. at 322. "Only disputes over facts that might affect the outcome of the suit under the



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant substantive law determines whether a fact is "material." Id.

On a motion for summary judgment, the facts and all reasonable inferences drawn therefrom must be viewed by the court in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Nor may the court invade the province of the jury by making "[c]redibility determinations," weighing the evidence, or "drawing . . . legitimate inferences from the facts . . . ." Anderson, 477 U.S. at 255. But the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence'" and "cannot solely rely on 'mere allegations or denials of his pleadings.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252; Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003)). Rather, the non-moving party must present "'sufficient evidence favoring [him] for a jury to return a verdict for [him].'" Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). Summary judgment is proper, however, if the court determines "that no reasonable jury could find for the non[-]moving party on the evidence before it." Morrison v. Cnty. of Fairfax, Va., 826 F.3d 758, 765 (4th Cir. 2016) (citing Moss v. Parks Corp., 985 F.3d 736, 738 (4th Cir. 1993)).

Further, on a motion for summary judgment, when the nonmoving party bears the burden of persuasion at trial, the moving party may provide evidence that negates an essential element of the opposing party's case or show that there is an absence of



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 5 -

evidence to support the nonmoving party's case.  <u>Va. Vermiculite, Ltd. V. W.R. Grace & Co.-Conn.</u>, 108 F. Supp. 2d 549, 553 (W.D. Va. 2000).  Then the nonmoving party must present evidence sufficient to establish the existence of every element essential to its case, for which it will bear the burden of proof at trial.  <u>Id.</u>  A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  <u>Id.</u>  If the nonmoving party's evidence is not significantly probative, summary judgment may be granted.  <u>Id.</u>

II.   **<u>Summary Judgment Must be Granted Because Nurse Seekford and Nurse Raynes Were Not Deliberately Indifferent to a Serious Medical Need[3]</u>**

The Eighth Amendment to the United State Constitution prohibits the infliction of cruel and unusual punishment; but it "'does not mandate comfortable prisons.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 339 (1981)). Yet, "'[a] prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment . . . ." <u>Jackson  v. Lightsey</u>, 775 F.3d 170, 178 (4th Cir. 2014) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).

Properly stated Eighth Amendment deliberate indifference claims contain both an objective and subjective component. <u>Drakeford v. Mullins</u>, 678 F. App'x 185, 186 (4th Cir. 2017) (per curiam). The objective component consists of an allegation that the prisoner (1) suffered "a serious or significant physical or emotional injury . . . or (2) demonstrated a substantial risk of such serious harm . . . ." <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003). In order to be serious enough to give rise to a constitutional claim, the medical need generally must risk loss of life, permanent disability, or a condition for which lack of

---

[3] For the same reasons, Defendants also move for summary judgment on Plaintiff's claim for attorney fees for his § 1983 claims.

1091.0001\KMD
4842-8307-0073 .v1

treatment perpetuates severe pain. <u>Acevedo v. Warner</u>, No. 7:03cv526, 2005 U.S. Dist. LEXIS 32332, at *29–30 (W.D. Va. Mar. 29, 2005) (citations omitted).

To meet the subjective component, the defendant must have "a sufficiently culpable state of mind." <u>De'Lonta</u>, 330 F.3d at 634 (citations omitted). The defendant must (1) "actually know of and disregard an objectively serious condition, medical need, or risk of harm," <u>id.</u>; and (2) actually know of "'the excessive risk posed by the official's action or inaction.'" <u>Scinto v. Stansberry</u>, 841 F.3d 219, 226 (4th Cir. 2016) (quoting <u>Jackson</u>, 775 F.3d at 178).

Also, the alleged deprivation must be "extreme," and the defendant's conduct must entail "more than mere negligence." <u>Id.</u> (internal quotations omitted). For purposes of a health care provider, the medical treatment must have been so "'grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Sharpe v. S.C. Dep't of Corr.</u>, 621 F. App'x 732, 733 (4th Cir. 2015) (quoting <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990)). Mere disagreements "over the inmate's proper medical care" are generally not actionable. <u>Scinto</u>, 841 F.3d at 225-26 (quotations omitted). Indeed, "disagreements between a patient and his medical care givers" do not equal deliberate indifference. <u>Thompson v. Clarke</u>, No. 7:17cv10, 2018 WL 1547360, 2018 U.S. Dist. LEXIS 53193, at *15 (W.D. Va. Mar. 29, 2018) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976)).

**a.    Nurse Seekford was not deliberately indifferent to Plaintiff's medical needs.**

Nurse Seekford was not deliberately indifferent because she did not know of and disregard Plaintiff's medical condition; rather, Nurse Seekford never recorded or reviewed Plaintiff's blood sugar readings.  Under § 1983, "it must be affirmatively shown



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 7 -

that the official charged acted personally in the deprivation of the plaintiff's rights." <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985). The defendant "must have had personal knowledge of and involvement in the alleged deprivation of [a plaintiff]'s rights in order to be liable." <u>Id.</u>

Nurse Seekford did not have personal knowledge and involvement in Plaintiff's diabetes care and treatment. Nurse Seekford never tested Plaintiff's blood sugar (Ex. 4 – Seekford p. 45 ln. 17-20) nor did she review Plaintiff's blood sugar flow sheets (Ex. 4 – Seekford p. 49 ln. 19-24). As such, Nurse Seekford was not deliberately indifferent because she had no actual knowledge of Plaintiff's treatment and was not involved in his treatment; Nurse Seekford is entitled to summary judgment.

> **b.   Nurse Raynes was not deliberately indifferent to Plaintiff's medical needs.**

Nurse Raynes was not deliberately indifferent because she did not know of and disregard Plaintiff's medical condition; rather, Nurse Raynes followed the doctor's orders. A nurse does not act with deliberate indifference when he or she adheres to the treating physician's directions regarding the administration of medication. <u>McCoy v. Abbasi</u>, Civil Action No. 3:11CV09, 2012 U.S. Dist. LEXIS 177615, 2012 WL 6562759, at *8-9 (E.D. Va. Dec. 14, 2012); *see also* <u>Bauer v. Kramer</u>, 424 F. App'x 917, 919 (11th Cir. 2011) (concluding inmate could not state a claim against nurse who followed doctor's orders regarding prescribed medication); <u>Smith v. Municipality of Lycoming Cty.</u>, 335 F. App'x 147, 150 (3d Cir. 2009) (no deliberate indifference where nurses who did not administer a prescription were "following doctor's orders, as they must"); <u>Thomas v. Davis</u>, No. 3:07-CV-205 WL, 2008 U.S. Dist. LEXIS 41331, 2008 WL 2157161, at *3 (N.D. Ind. May 22, 2008) ("Nurses take orders from doctors. The nurse had no duty to independently



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1

diagnose [the inmate] contrary to the professional judgments rendered by the treating physicians."). It is not the function of nurses to second guess the treatment decisions of licensed physicians; nurses cannot "substitute their judgment for a medical professional's prescription." Ratcliffe v. Russell, No. 7:16CV00582, 2018 U.S. Dist. LEXIS 48969, 2018 WL 1474081, at *12 (W.D. Va. Mar. 26, 2018) (citations omitted) (holding nurses could lawfully rely on doctor's decisions about whether plaintiff's complaints required immediate attention from a specialist or warranted a prescription).

Nurse Raynes was not deliberately indifferent because she was following the doctor's orders regarding Plaintiff's treatment. Per the doctor's orders, Nurse Raynes took and recorded Plaintiff's blood sugar for the doctor's review, and in January, Plaintiff's blood sugar was checked and recorded twice per day. (Ex. 6 – Rupe p. 175, ln. 9-17). When Plaintiff's blood sugar was higher than usual, Nurse Raynes provided him education on what foods to avoid and told him to put in a request to see the doctor. (Ex. 3 – Raynes p. 55 ln. 12 – p. 56 ln. 23; p. 48 ln. 20 – p. 49 ln. 3). By placing a sticky note on the chart, Nurse Raynes flagged Plaintiff's chart for Dr. Moran's review when Plaintiff's blood sugar was consistently over 200. (Ex. 3 – Raynes p. 44 ln. 18 – p. 45 ln. 2). SHP's Treatment Protocols suggest nurses notify the doctor when a patient's blood sugar is 351 and above and is not responsive to oral medications (Ex. 6 – Rupe Ex. 2),[4] but Nurse Raynes never obtained or recorded a blood sugar reading that was 351 or above (Ex. 6 – Rupe Ex. 5). Dr. Moran reviewed and signed Plaintiff's blood sugar readings weekly (Ex. 3 – Raynes p. 14 ln. 17-18), but he never ordered insulin or any other diabetic medication for Plaintiff

---

[4] Plaintiff expert opines that SHP's Treatment Protocols for diabetes meet the standard of care. (Ex. 6 – Rupe p. 161 ln. 23 – p. 162 ln. 3).

- 9 -

(Ex. 4 – Seekford p. 55 ln. 9-20). Nurse Raynes is not authorized to order insulin or any other prescription medication. (Ex. 6 – Rupe p. 146 ln. 13-25 –p. 147 ln. 1-7). As such, Nurse Raynes did not deliberately disregard Plaintiff's medical condition; rather, she followed the doctor's orders. Nurse Raynes is entitled to summary judgment.

### III.   Summary Judgment Must Be Granted Because SHP, Nurse Raynes and Nurse Seekford Did Not Breach Plaintiff's Alleged Standard of Care.

A nurse has a duty to use the degree of skill and diligence in the care and treatment of her patient that a reasonably prudent nurse in the same field of practice or specialty in this State would have used under the circumstances of this case. Riverside Hosp., Inc. v. Johnson, 272 Va. 518, 535 (2006). The standard of care must be determined by expert testimony. Id. at 536.

Plaintiff's expert opines that the unspecified SHP nurses violated the standard of care by not letting Dr. Moran know that Plaintiff's blood sugar was high, not calling the doctor when his blood sugar was high, and not ordering him medication. (Ex. 6 – Rupe p. 150 ln. 16-25).[5] She also opines that SHP violated the standard of care by not enforcing their policies and procedures. (Ex. 6 – Rupe p. 151 ln. 2-22).

---

[5] Plaintiff's expert also opines that it was a breach of the standard of care to give Plaintiff pseudoephedrine. However, this is not and has never been the basis of Plaintiff's Second Amended Complaint. Specifically, Plaintiff's expert opined that use of such medication put Plaintiff at risk for a stroke or myocardial infarction. (Ex. 1 – Rupe's Report). But she then admits that Plaintiff has not actually had a stroke or heart attack. (Ex. 6 – Rupe p. 94 ln. 8-11).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

Plaintiff's expert further opines that it was a breach of the standard of care for SHP nurses to not talk with Plaintiff about his diabetes when they saw him for sick call on other issues. (Ex. 6 – Rupe p. 149 ln. 22 – p. 150 ln. 5). However, Plaintiff was not possibly damaged in any way by this since he had the ability to put in requests to see Dr. Moran and medical staff for his diabetes, but he never put in such a request. (Ex. 2 – Hixson p. 47, ln. 7-23). And while seeing Dr. Moran and medical staff for other issues, Plaintiff never raised his diabetes complaints. (Ex. 2 – Hixson p. 48 ln. 4-10). Further, Plaintiff never filed a grievance regarding his diabetes. (Ex. 2 – Hixson p. 48, ln. 11-13).

1091.0001\KMD
4842-8307-0073 .v1

**a. Nurse Raynes let Dr. Moran know when Plaintiff's blood sugar was higher than normal, and Nurse Seekford never took his blood sugar.**

Plaintiff's expert opines that the SHP nurses violated the standard of care by not letting Dr. Moran know that Plaintiff's blood sugar was high.  However, Nurse Raynes informed Dr. Moran of Plaintiff's blood sugar in a number of ways and therefore did not breach the standard of care.  She took and recorded Plaintiff's blood sugar for the doctor to review weekly.  (Ex. 3 – Raynes p. 14 ln. 17-18; Ex. 6 – Rupe p. 175, ln. 9-17).  And Nurse Raynes notified Dr. Moran when Plaintiff's blood sugar was consistently over 200 by placing a sticky note on the chart.  (Ex. 3 – Raynes p. 44 ln. 18 – p. 45 ln. 2).  Thus, Nurse Raynes informed Dr. Moran of Plaintiff's blood sugar and did not violate a standard of care.

As to Nurse Seekford, she never tested Plaintiff's blood sugar (Ex. 4 – Seekford p. 45 ln. 17-20), and she did not review Plaintiff's blood sugar flow sheets (Ex. 4 – Seekford p. 49 ln. 19-24).  As such, she did not breach a standard of care because she was not involved in Plaintiff's treatment.

**b. The named SHP nurses did not take a blood sugar reading for which SHP Protocols would have suggested they notify the doctor.**

Plaintiff's expert opines that the SHP nurses violated the standard of care by not calling Dr. Moran when Plaintiff's blood sugar was high.  However, Plaintiff's expert also opined that SHP's Treatment Protocols for diabetes meet the standard of care (Ex. 6 – Rupe p. 161 ln. 23-25 – p. 162 ln. 1-3); SHP's Treatment Protocols suggest nurses notify the doctor when a patient's blood sugar is 351 and above (Ex. 6 – Rupe Ex. 2).  Neither Nurse Raynes nor Nurse Seekford ever recorded a blood sugar reading that was 351 or above.  (Ex. 6 – Rupe Ex. 5).  Additionally, Nurse Raynes flagged Plaintiff's chart for Dr.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 11 -

Moran's review when Plaintiff's blood sugar was consistently over 200. (Ex. 3 – Raynes p. 44 ln. 18 – p. 45 ln. 2). And Dr. Moran reviewed the readings and signed them weekly. (Ex. 6 – Rupe Ex. 5). As such, the named SHP nurses did not breach a standard of care because they did not take a blood sugar reading for which SHP Protocols would have suggested they notify the doctor.

### c. SHP Nurses are not authorized to order insulin or other medication without a doctor's order.

Plaintiff's expert opines that the SHP nurses violated the standard of care by not offering Plaintiff intervention. However, nurses are not authorized to order insulin or any other prescription medication. (Ex. 6 – Rupe p. 146 ln. 13-25 –p. 147 ln. 1-7). Only Dr. Moran can do so. Dr. Moran reviewed and signed Plaintiff's blood sugar readings weekly (Ex. 3 – Raynes p. 14 ln. 17-18) and never ordered insulin or any other diabetic medication for Plaintiff (Ex. 4 – Seekford p. 55 ln. 9-20). Rather Dr. Moran ordered blood sugar checks and a diabetic diet. (Ex. 4 – Seekford p. 47 ln. 7-9, p. 48 ln. 20-22; Ex. 5 – Moran p. 34 ln. 13-20). Nurse Raynes did provide Plaintiff education on what foods to avoid and did tell him to put in a request to see the doctor. (Ex. 3 – Raynes p. 55 ln. 12 – p. 56 ln. 23; p. 48 ln. 20 – p. 49 ln. 3). However, Plaintiff never put in a request to see Dr. Moran about his diabetes. (Ex. 2 – Hixson p. 47, ln. 7-23). Based on these facts, the named SHP nurses did not breach a standard of care by not offering Plaintiff intervention because they were not authorized to order Plaintiff insulin or other prescription medication.



FRITH ANDERSON + PEAKE PC ATTORNEYS AT LAW Roanoke, Virginia

### d. SHP did not violate a standard of care by not enforcing policies because Virginia does not recognize a cause of action for negligent supervision.

1091.0001\KMD
4842-8307-0073 .v1

Plaintiff's expert opines that SHP violated the standard of care by not enforcing their policies and procedures. (Ex. 6 – Rupe p. 151 ln. 2-22). However, this is an attempt to disguise a negligent supervision claim. Virginia does not recognize a claim for negligent supervision. <u>Williams v. Shall</u>, Record No. 120889, 2013 Va. Unpub. LEXIS 1, *3 (2013) (citing <u>Chesapeake & Potomac Telephone Co. v. Dowdy</u>, 235 Va. 55 (1988)). Further, Plaintiff's expert provides no opinions on proper supervision of nurses or proper enforcement of policies and procedures, and she is not qualified to opine on supervision of nurses since she had not actively supervised nurses within one year of August 23, 2016 (Ex. 6 – Rupe p. 140 ln. 15-18). *See* Va. Code § 8.01-581.20. Thus, SHP did not violate a standard of care and is entitled to summary judgment.

**IV.**    <u>**Summary Judgment Must Be Granted on the Punitive Damages Claim Because Defendants Showed Some Degree of Care.**</u>

"The imposition of punitive damages is not favored generally and, '[b]ecause punitive damages are in the nature of a penalty, they should be awarded only in cases of the most egregious conduct.'" <u>Owens-Corning Fiberglas Corp. v. Watson</u>, 243 Va. 128, 144 (1992) (quoting <u>Philip Morris Incorporated v. Emerson</u>, 235 Va. 380, 407 (1988)). Willful or wanton negligence or malicious conduct will support an award of punitive damages. <u>Owens-Corning Fiberglas Corp.</u>, 243 Va. at 144. But the evidence must prove something more than ordinary negligence and more even than gross negligence. <u>Id.</u> at 145. Here, the evidence does not even rise to the level of gross negligence, and therefore, summary judgment must be granted on the punitive damages claim.

Under Virginia law, "gross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1

complete neglect of the safety of another. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." <u>Griffin v. Shively</u>, 227 Va. 317, 320, 315 S.E.2d 210, 212 (1984) (internal quotations omitted). Plaintiffs face a steep hurdle when claiming a defendant's actions amounted to gross negligence. <u>See</u> <u>Doe v. Russell Cnty. Sch. Bd.</u>, 292 F. Supp. 3d 690, 716 (W.D. Va. 2018) ("[T]he standard for gross negligence is very high.").

"[G]ross negligence is the 'absence of slight diligence, or the want of even scant care.'" <u>Colby v. Boyden</u>, 241 Va. 125, 132, 400 S.E.2d 184, 188 (1991) (quoting <u>Frazier v. City of Norfolk</u>, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987)). It does not arise from "lack of attention and diligence, or mere inadvertence . . . ." <u>Finney v. Finney</u>, 203 Va. 530, 531, 125 S.E.2d 191 (1962). While gross negligence is "something less than . . . willful, wanton, and reckless conduct," the defendant's acts must clearly amount to a "heedless and palpable violation of legal duty respecting the rights of others . . . ." <u>Elliott v. Carter</u>, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (quoting <u>Chapman v. City of Virginia Beach</u>, 252 Va. 186, 190, 475 S.E.2d 798, 800-01 (1996)). If the defendant exercised some degree of diligence or care, however, a gross negligence claim must fail as a matter of law. <u>Elliott</u>, 292 Va. at 622-23, 791 S.E.2d at 732-33.

Constructive knowledge of a risk is insufficient as a matter of law to establish gross negligence. <u>City of Lynchburg v. Brown</u>, 270 Va. 166, 171, 613 S.E.2d 407, 410 (2005). Because the standard for gross negligence is "indifference," the defendant must have actual knowledge of the alleged harm. <u>Id.</u> "Deliberate conduct is important evidence on the question of gross negligence." <u>Chapman v. City of Virginia Beach</u>, 252 Va. 186, 190 (1996) (citations and internal quotation marks omitted); <u>Reid v. Newton</u>, No. 3:13cv572,



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

2014 WL 1493569, 2014 U.S. Dist. LEXIS 52072, at *21-22 (E.D. Va. Apr. 14, 2014) ("In the case of a failure to act, deliberate conduct necessarily implies actual knowledge of facts that create a choice to act or to abstain.").

### 1.   Gross negligence in Virginia after <u>Elliott v. Carter</u>.

In October 2016, the Supreme Court of Virginia reviewed the requirements for maintaining a gross negligence claim in <u>Elliott v. Carter</u>, 292 Va. 618 (2016). The <u>Elliott</u> Court affirmed an award of summary judgment to a defendant.

In <u>Elliott</u>, a Boy Scout troop took an overnight camping trip on the Rappahannock River.  A sixteen-year-old troop leader ("Carter") took three younger scouts down to the river to a partially submerged sandbar approximately 150 yards into the river. One of the younger scouts knew how to swim, one did not, and the third scout, a thirteen year old ("Caleb"), had taken some swimming lessons but did not know how to swim. <u>Id.</u> at 620. Carter instructed the two scouts who could not swim to stay on the sandbar. <u>Id.</u> As the boys returned to their campsite, the two scouts who could not swim walked back to the campsite on the sandbar but fell off the sandbar into deeper water. <u>Id.</u> Carter attempted to rescue the two scouts. One scout was saved, but Caleb drowned. <u>Id.</u> at 620-21.

Caleb's mother filed a wrongful death suit alleging Carter and the four adult scout leaders present during the camping trip were grossly negligent. <u>Id.</u> at 621. All of the defendants moved for summary judgment as to the gross negligence claim "because there was no complete lack of care alleged . . . ." <u>Id.</u> at 621.  The trial court granted the motion for summary judgment finding "there is not gross negligence as a matter of law when there is even the slightest bit of care regardless of how insufficient or ineffective it may have been." <u>Id.</u> Caleb's mother appealed the trial court's ruling only as to Carter.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

On appeal, the Supreme Court of Virginia affirmed the trial court's award of summary judgment for Carter. Id. at 623. The Elliott Court identified four "undisputed material facts" in support of its decision that "Carter exercised some degree of care in supervising Caleb." Id. Carter's conduct did not constitute gross negligence because:

[1.] It [was] not alleged that Caleb had any difficulty walking out along the sandbar with Carter.
[2.] [T]here [was] no allegation that Carter was aware of any hidden danger posed by the sandbar, the river or its current.
[3.] Carter instructed Caleb to walk back to shore along the same route he had taken out into the river, and there was no evidence that conditions changed such that doing so would have been different or more dangerous than initially walking out, which was done without difficulty.
[4.] Finally, Carter tried to swim back and assist Caleb once Caleb slipped off the sandbar, which is indicative that Carter was close enough to attempt to render assistance when Caleb fell into the water, and that Carter did attempt to render such assistance.

Id. "Thus, although Carter's efforts may have been inadequate or ineffectual, they were not so insufficient as to constitute the indifference and utter disregard of prudence that would amount to a complete neglect for Caleb's safety, which is required to establish gross negligence." Id.

After the Elliott decision, the United States District Court for the Eastern District of Virginia granted a defendant's motion to dismiss a gross negligence claim where a plaintiff's allegations showed a defendant exercised some degree of care. Murray v. Correct Care Solutions, LLC, No. 3:16cv279, 2017 WL 214189, 2017 U.S. Dist. LEXIS 7244, at *6 (E.D. Va. Jan. 18, 2017). In Murray, an inmate at a prison died after complaining of breathing problems. When the inmate first complained, one defendant, an on-call doctor, ordered administration of oxygen and further monitoring without ever actually seeing the inmate. The doctor did not follow up on the inmate's status, receive any updates, or provide further treatment. The inmate died two days later. Id. at *2. The Murray Court



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1

granted a motion to dismiss the gross negligence claim against the doctor because "the facts plead . . . accepted as true, simply do not allege plausible claims of gross negligence . . . ." Id. at *7.

More recently, the United States District Court for the Eastern District of Virginia again granted a motion to dismiss a gross negligence claim in a case involving an alleged assault by police officers. Henderson v. Huling, No. 4:16cv166, 2017 U.S. Dist. LEXIS 153215, at *4–5 (E.D. Va. Sept. 19, 2017). The plaintiff in Henderson claimed police officers threw him to the ground, beat him, and used a taser on him. Id. at *5. The plaintiff conceded that the officers called for an ambulance before taking the plaintiff to jail. Id. The Henderson court ruled there could be no gross negligence by the police officers because they requested an ambulance to treat the plaintiff after arresting him. Id. at *12; see also Cubbage v. Piedmont Reg'l Jail Auth., No. 3:18cv333, 2018 U.S. Dist. LEXIS 143884, 2018 WL 4040231 (E.D. Va. Aug. 23, 2018).

The import of Elliott, Murray, and Henderson is that there is "not gross negligence as a matter of law when there is even the slightest bit of care regardless of how insufficient or ineffective it may have been." Elliott, 292 Va. at 621, 791 S.E.2d at 732.

### 2. SHP Defendants exercised care.

Plaintiff's punitive damages claim fails because SHP Defendants exercised "some degree of diligence and care" and thereby were not grossly negligent:

- Dr. Moran ordered daily blood sugar checks and a diabetic diet. (Ex. 4 – Seekford p. 47 ln. 7-9, p. 48 ln. 20-22; Ex. 5 – Moran p. 34 ln. 13-20).

- The nurses checked Plaintiff's blood sugar daily. (Ex. 6 – Rupe Ex. 5).

- When Plaintiff's blood sugar was higher than usual, Nurse Raynes provided him education on what foods to avoid. (Ex. 3 – Raynes p. 48 ln. 20 – p. 49 ln. 3).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 17 -

-   In January, the nurses began checking Plaintiff's blood sugar twice per day per Dr. Moran's order.  (Ex. 6 – Rupe p. 175, ln. 9-17).

-   Nurse Raynes told Plaintiff to put in a request to see the doctor about his diabetes.  (Ex. 3 – Raynes p. 55 ln. 12 – p. 56 ln. 23).

-   Dr. Moran saw Plaintiff for other medical issues, but Plaintiff never talked to him about his diabetes.  (Ex. 2 – Hixson p. 48 ln. 4-10).  Plaintiff never put in requests to see Dr. Moran and/or medical staff for his diabetes.  (Ex. 2 – Hixson p. 47, ln. 7-23).

-   Nurse Raynes notified Dr. Moran when Plaintiff's blood sugar was consistently over 200 by placing a sticky note on the chart for his review.  (Ex. 3 – Raynes p. 44 ln. 18 – p. 45 ln. 2).

-   Nurse Seekford never took Plaintiff's blood sugar.  (Ex. 4 – Seekford p. 45 ln. 13-20).

-   Dr. Moran reviewed and signed Plaintiff's blood sugar readings weekly.  (Ex. 4 – Raynes p. 14 ln. 17-18).

Based on these facts, Plaintiff's complaints amount only to a claim that the SHP Defendants' efforts, from Plaintiff's viewpoint, were inadequate.  But "[t]he standard for gross negligence in Virginia is one of indifference, not inadequacy . . . ." <u>Elliott</u>, 292 Va. at 622 (internal quotations omitted). Mere inadequacy is insufficient to establish gross negligence.

The Virginia Supreme Court's decision in <u>Elliott v. Carter</u> illustrates that courts must closely examine a plaintiff's allegations of gross negligence. Here, Nurse Raynes and SHP clearly exercised care regarding Plaintiff, and no reasonable jurist could find that SHP and Nurse Raynes did "nothing at all" for Plaintiff's care.   <u>Carter</u>, 292 Va. at 622. Additionally, Nurse Seekford did not take any of Plaintiff's blood sugar readings, so she had no actual knowledge.  <u>City of Lynchburg</u>, 270 Va. at 171.  As such, Plaintiff failed to



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 18 -

even establish gross negligence as to the SHP Defendants, and thereby Plaintiff is not entitled to punitive damages as a matter of law.

**V.      Summary Judgment is Proper Because Plaintiff Cannot Prove an Essential Element of His Medical Malpractice Case, Namely Causation of Damages.**

Under Virginia law, issues "beyond the realm of common knowledge and experience of a lay jury" generally require expert testimony. *See* Beverly Enters.-Va., Inc. v. Nichols, 247 Va. 264, 267 (1994).   In technical negligence cases, such as medical malpractice, "[e]xpert testimony is ordinarily necessary to establish the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages." *See* id.

The damages recoverable in any case must be susceptible of ascertainment with a reasonable degree of certainty, or, as the rule is sometimes stated, must be certain both in their nature and in respect of the cause from which they proceed; damages which are uncertain, contingent, or speculative cannot be recovered.  Barnes v. Graham Va. Quarries, Inc., 204 Va. 414, 418 (1963).  "No recovery can be had where resort must be had to speculation or conjecture for the purpose of determining whether the damages resulted from the act of which complaint is made or from some other cause, or where it is impossible to say what, if any, portion of the damages resulted from the fault of the defendant and what portion from the fault of the plaintiff himself."  Id.  Where damages are occasioned by a combination of causes originating from different sources, it is for the jury to determine from the evidence what part is attributable to a defendant and what part to other persons or other causes, but the burden is on a plaintiff to produce evidence which will show "within a reasonable degree of certainty the share of the defendant therein."  Id. (citing Smith v. The Pittston Co., 203 Va. 711, 715 (1962)).



1091.0001\KMD
4842-8307-0073 .v1

Here, Plaintiff's expert failed to support her opinion that the Defendants' actions were the proximate cause of Plaintiff's irreversible eye and kidney damage.  Her opinion is essentially that "anyone who's five months nontreated diabetic is going to have some microvascular changes."  (Ex. 6 – Rupe p. 114 ln. 9-17).  But Plaintiff's expert admits that renal disease and retinopathy can occur just from diabetes.  (Ex. 6 – Rupe p. 95 ln. 8-17). She further admitted that it takes 15-20 years for any irreversible organ damage to occur. (Ex. 6 – Rupe p. 53 ln. 23 – p. 54 ln. 20).  Specifically, she indicated that it is an "accumulative effect."  (Ex. 6 – Rupe p. 95 ln. 18 – p. 96 ln. 4).  Plaintiff's expert states that Defendants' actions "put the patient at greater risk for chance of renal disease and retinopathy and possibly down the road cardiomyopathy, cardiac disease and/or small vessel disease to the brain."  (Ex. 6 – Rupe p. 109 ln 15 – p. 110 ln. 17).  She opined that Defendants' action created a greater risk for Plaintiff of complications "down the line;" however, she cannot quantify that risk.  (Ex. 6 – Rupe p. 109 ln 15 – p. 110 ln. 17).

Next, Plaintiff's expert admits that Plaintiff's elevated platelet count from polycythemia vera can cause renal problems, but she does not know if polycythemia vera could cause the specific renal damage on Plaintiff's CT scan.  (Ex. 6 – Rupe p. 115 ln. 19 – p. 116 ln. 1; p. 111 ln. 12-25).  She admits that Plaintiff's methamphetamine use can also impact his kidneys.  (Ex. 6 – Rupe p. 112 ln. 1-9).  In fact, she admitted that she cannot distinguish the damage caused by his methamphetamine use from any damage caused by his glucose levels while incarcerated.  (Ex. 6 – Rupe p. 112 ln. 10 – p. 113 ln. 2).  And Plaintiff's expert admits that Plaintiff's use of ibuprofen while diagnosed with diabetes and hypertension can lead to some renal problems.  (Ex. 6 – Rupe p. 119 ln. 16 – p. 120 ln. 5).  Then, Plaintiff's expert admits that Plaintiff's alcohol use can cause eye issues, such as



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 20 -

cataracts , macular degeneration, and optic nerve degeneration.  (Ex. 6 – Rupe p. 119 ln. 1-15).  Finally, Plaintiff's expert admits that Plaintiff's kidney disease could be caused by a number of different conditions, but "the most likely horse in the barn" is diabetes.  (Ex. 6 – Rupe p. 116 ln. 8 – p. 118 ln. 21).

Plaintiff has not designated an expert to speak to any future treatment required nor has Plaintiff designated any other expert to speak to Plaintiff's damages.  Plaintiff has not even designated his treating physicians.  As such, Plaintiff's claim for damages is entirely speculative.  The burden is on Plaintiff to produce evidence showing within a reasonable degree of certainty the share of damages attributable to Defendants, and Plaintiff has utterly failed to do so.  Instead, as opined by Dr. Suaava, "we cannot say that the care provided to Mr. Hixon during his incarceration damaged Mr. Hixson's kidneys based on one urine that showed mild proteinuria in a diabetic that was poorly compliant with an unknown amount of time living as an undiagnosed diabetic" and "without a baseline ophthalmology exam, it is impossible to determine the time of onset [of Plaintiff's retinopathy]."  (Exhibit 7 – Suaava's Report).

## CONCLUSION

Because (1) nurses are not allowed by law to order medication without a prescription, (2) the doctor reviewed the blood sugar readings and never prescribed medication, (3) Nurse Seekford never took Plaintiff's blood sugar, (4) Nurse Raynes flagged Plaintiff's high blood sugar readings for the doctor's review, and (5) Plaintiff's failed to establish causation of damages, summary judgment is warranted.  To withstand this motion for summary judgment, Plaintiff must come forward with more than "unsubstantiated allegations and bald assertions" to create a genuine issue of material



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1

fact as to whether Defendants were deliberately indifferent or committed medical malpractice.  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996).

WHEREFORE, for the foregoing reasons, SHP, Nurse Raynes, and Nurse Seekford, by counsel, respectfully request the entry of an Order granting their Motion for Summary Judgment, dismissing them from this case with prejudice, and granting such further relief as the Court deems just and proper.

Respectfully Submitted,

s/ John C. Johnson
John C. Johnson
VSB No. 33133
Katherine M. DeCoster
VSB No.: 82696
Attorney for Southern Health Partners, Inc.
and Nurses Seekford and Raynes
FRITH ANDERSON + PEAKE, PC
29 Franklin Road, S.W.
Post Office Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:  540/772-9167
Email: jjohnson@faplawfirm.com
        kdecoster@faplawfirm.com



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify all attorneys of record, including:

Mario B. Williams, Esq.
Andrew R. Tate, Esq.
Nexus Derechos Humanos, Inc.
44 Broad Street, NW, Suite 220
Atlanta, GA 30303
*Counsel for Plaintiff*

Susan A. Waddell, Esq.
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, VA 24153
*Counsel for Defendant Dr. Moran*

/s/ John C. Johnson
John C. Johnson
VSB No. 33133
Katherine M. DeCoster
VSB No.: 82696
Attorney for Southern Health Partners, Inc.
and Defendants Seeksford and Raynes
FRITH ANDERSON + PEAKE, PC
29 Franklin Road, S.W.
Post Office Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax: 540/772-9167
Email:        jjohnson@faplawfirm.com
              kdecoster@faplawfirm.com



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1091.0001\KMD
4842-8307-0073 .v1